# In the United States Court of Federal Claims

No. 11-256 C
(Filed: January 24, 2012)

```
*************************************
                                    *
AUTO CLUB INSURANCE                 *
ASSOCIATION,                        *
                                    *
                Plaintiff,          *
                                    *
      v.                            *
                                    *
THE UNITED STATES,                  *
                                    *
                Defendant.          *
                                    *
*************************************
```

*M. Sean Fosmire*, Garan Lucow Miller, P.C., Marquette, MI, for Plaintiff.

*Antonia R. Soares*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant; *James P. Walsh*, Office of General Counsel, United States Department of Health and Human Services, Chicago, IL, of counsel.

## OPINION

**DAMICH**, Judge:

      Plaintiff, a Michigan no-fault automobile insurance corporation, seeks reimbursement from the federal government of its payment of the prescription medication expenses of one of its insureds injured in a motor vehicle accident in February 1980. The insured became eligible for Medicare health coverage in 2005 and for its Part D prescription drugs benefit in 2006, but the medication expenses have continued to be paid in the first instance by Plaintiff as required by Michigan's no-fault automobile insurance statute.

      Plaintiff argues, however, that, under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b)(2) ("MSPA" or "the Act"), effective December 5, 1980, and implementing regulations of the Centers for Medicare and Medicaid Services ("CMS"), Medicare is the primary insurer for medical expenses for accidents that occurred prior to the Act. Plaintiff reasons that the Act and its regulations provide "for a system and regimen allocating the rights and responsibilities as between CMS and the other [insurance] payers" and that a "right of reimbursement" exists "when a no-fault insurer has paid an item that the law provides is the primary obligation of the Medicare program." Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 2, 3.

The Government has moved to dismiss for lack of subject matter jurisdiction, arguing that the MSPA is not a money-mandating statute nor has Plaintiff demonstrated an implied contract within the terms of the Tucker Act's limited waiver of the bar of sovereign immunity.

For the reasons stated below, Defendant's motion to dismiss is granted.

I.   Background

The individual whose medical expenses are the subject of Plaintiff's claim, identified in the complaint as "V.R.," was injured in a motor vehicle accident in February 1980. He (or she) was insured by Plaintiff, a reciprocal insurance company organized under the laws of Michigan. "[A]s such the coverage afforded under the Auto Club policy was governed by the requirements of the Michigan No-fault Automobile Insurance Act (No-fault Act), Public Act 294 (1972), as amended." Compl. ¶ 7.

According to Plaintiff,

> [u]nder Michigan law, when an insured's medical expenses are submitted to a no-fault automobile insurance carrier, that carrier must pay those expenses, even if properly payable, in whole or in part, by other coverage or resources. If there are issues relating to coverage or priority, the no-fault insurer's obligation is to pay the item, and then seek repayment or reimbursement from other coverage or resources.

*Id.* ¶ 10.

Once V.R. became eligible for coverage under Medicare in 2005 and, in particular, for Medicare's Part D prescription benefits coverage in 2006, because his (or her) accident occurred prior to the December 1980 effective date of the MSPA, Plaintiff alleges, the primary responsibility for his health expenses became that of Medicare. The Michigan no-fault carriers, however, "are not permitted to deny coverage when the expenses – properly payable by Medicare – are submitted to them for payment by the providers." Pl.'s Resp. at 6.

Plaintiff thus has turned to this court to enforce what it asserts is Medicare's "obligation of reimbursement"; otherwise, "No-fault automobile insurers in Michigan are caught on the horns of a major dilemma, in the very small number of Medicare cases that include this one."[1] *Id*.

Plaintiff concedes that, under the MSPA, Medicare is the secondary payor, and the insurer the primary, of medical expenses from motor vehicle accidents occurring on or after

---

[1] Plaintiff's counsel also filed two other complaints in this court raising similar legal arguments: *Citizens Ins. Co. of Am. v. United States*, No. 11-257 C (Fed. Cl. filed Apr. 22, 2011) and *Auto Club Ins. Ass'n v. United States*, No. 11-406 C (Fed. Cl. filed June 11, 2011). In *Citizens*, the court granted Defendant's motion to dismiss. *See* No. 11-257 C, 2011 WL 6934813 at *10 (Fed. Cl. Dec. 29, 2011).

December 5, 1980.  According to Plaintiff, CMS clarified by regulation in 1983, however, "that the MSP program does not apply to persons who are receiving medical treatment at any time, if it arises from a motor vehicle accident which occurred before December 5, 1980."  *Id*. at 5.  Auto Club thus alleges that it has paid expenses on V.R.'s behalf, stemming from a pre-December 1980 accident, that since 2005 are properly the responsibility of Medicare and for which Auto Club seeks reimbursement.  Plaintiff's dilemma is that "CMS has not established any administrative process for the submission of reimbursement claims of this nature."  *Id*. at 4.

Plaintiff founds its claim against the Government, therefore, on the MSPA and the regulations adopted by CMS under the Act.  It also argues that the Act and its regulations constitute an implied contract between CMS and no-fault insurers.  The Government has moved to dismiss for lack of subject-matter jurisdiction under the Tucker Act because the MSPA is not money-mandating and because the Court's jurisdiction does not extend to contracts implied by law.

II.   Standard of Review

In weighing a motion to dismiss for lack of subject-matter jurisdiction, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in [the] plaintiff's favor."  *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

It is well-established, however, that subject-matter jurisdiction is "a threshold question that must be resolved . . . before proceeding to the merits" of a claim.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).  When this court's jurisdiction is challenged, the plaintiff must demonstrate jurisdiction by a preponderance of the evidence.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

III.   Discussion

The Tucker Act, 28 U.S.C. § 1491 (2006), grants the United States Court of Federal Claims jurisdiction over monetary actions "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  § 1491(a)(1).  As such, it is an explicit waiver of the sovereign immunity of the United States.  *United States v. Testan*, 424 U.S. 392, 398 (1976).

Nevertheless, the Tucker Act is only a jurisdictional statute and does not create any independent substantive rights enforceable against the United States for money damages.  *See, e.g., United States v. Mitchell*, 463 U.S. 206, 216 (1983); *Testan*, 424 U.S. at 398.  In other words, not every claim involving the United States Constitution or an Act of Congress is cognizable under the Tucker Act.  Rather, a plaintiff's claim must be for money damages based on a "money-mandating" source of substantive law, and he must allege that he is "within the

class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008); *Fisher v. United States*, 402 F.3d 1167, 1173, 1175 (Fed. Cir. 2005) (en banc in relevant part).

      A.  The MSPA is Not a Money-Mandating Statute

In this respect, Plaintiff's reliance on the MSPA as the basis for this Court's jurisdiction is misplaced. Plaintiff notes that the Act establishes that Medicare is only a secondary payer for accidents occurring after the December 1980 effective date. *See* Compl. ¶ 11. It recognizes that in certain limited circumstances Medicare, via CMS, may make up-front a "conditional payment" even where another payer is considered under the Act to bear the primary responsibility. Pl.'s Resp. at 2. In those circumstances, the Act requires the primary payer to reimburse CMS for any such payments. *Id*.

Plaintiff's assertion of a reciprocal right of reimbursement, however, when the primary and secondary roles are reversed is, unfortunately, only a wishful extrapolation with no basis in the text of the MSPA. Plaintiff flatly acknowledges that "[f]inding the legal authority for a right of reimbursement flowing from the United States to the no-fault insurer when the primary/secondary roles are reversed does, we recognize, require more thought and analysis, because the right is not expressly declared in a statute." *Id*. at 5. Plaintiff argues instead that the Act as a whole establishes a "system and regimen allocating the rights and responsibilities as between CMS and the other payers." *Id*. at 2. The Act, however, does not go that far.

As Defendant more accurately points out, the statute is designed to vindicate "Medicare's rights," not the private insurer's. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). [2] The point of the MSPA was to reduce federal health care costs. *United Seniors Ass'n, Inc. v. Philip Morris USA*, 500 F.3d 19, 21 (1st Cir. 2007). Whereas, prior to the MSPA in 1980, Medicare generally covered the expenses for medical care whether or not the Medicare beneficiary was already covered by another health insurance plan, the MSPA specifically established the primary responsibility of the non-Medicare health care provider. For the protection of the insured, however, "[s]hould Medicare determine that the primary insurer has not paid and that no prompt payment reasonably can be expected from the primary insurer," the statute authorizes Medicare to pay the medical expenses up front. *Id*. The public's fiscal interest would nevertheless still be protected. "[S]uch payment is conditioned on Medicare's right to reimbursement in the event that a primary plan later pays or is found responsible for payment for the item or service." *Id.* (citing 42 U.S.C. § 1395y(b)(2)(B)). "The way the system is set up the beneficiary gets the health care she needs, but Medicare is entitled to reimbursement if and when the primary payer pays her." *Cochran v. U. S. Health Care Fin. Admin.*, 291 F.3d 775, 777 (11th Cir. 2002). As the Court of Federal Claims concluded in *Citizens*, however, there is nothing in the MSPA that "direct[s] the federal government to reimburse private insurers for their own expenses when Medicare is not a secondary payer." No. 11-257 C, 2011 WL 6934813 at *6.

---

[2] An additional indication that the MSPA is not intended to be read for the benefit of the private insurer is the provision of a private right of action *against* a primary plan which fails to meet its obligation for primary payment. 42 U.S.C. § 1395y(b)(3)(A).

4

The MSPA makes no mention, much less any "promise," of reimbursement *by* Medicare *to* a no-fault provider for expenses the private insurer alleges are the primary obligation of the federal government. The one-way focus of the MSPA in favor of the federal government may seem unfair, it may put Plaintiff on the horns of a dilemma given the mandate of Michigan no-fault statutes, and it may be fruitful ground for public policy debate, but the inquiry for this Court is whether the MSPA provides jurisdiction under the Tucker Act. For such jurisdiction, "[t]he claim must be one for money damages against the United States, and the claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" *Mitchell*, 463 U.S. at 216-17 (quoting *Testan*, 424 U.S. at 400). In *United States v. White Mountain Apache Tribe*, the Supreme Court elaborated: "a statute creates a right capable of grounding a claim within the waiver of sovereign immunity if, but only if" the statute mandates a right of recovery in money damages. 537 U.S. 465, 472 (2003).

Plaintiff, however, would have this Court upend the well-established requirement that a statutory or regulatory basis for Tucker Act jurisdiction be money-mandating. "The United States argues that the jurisdiction of this Court is limited to 'money-mandating' statutes. There is nothing in the language of the Tucker Act that so limits its scope." Pl.'s Resp. at 13. Instead, Plaintiff argues that *Testan* and its progeny only established a money-mandating requirement when a plaintiff was seeking relief, especially in the context of employment claims, other than money damages. Otherwise, in Plaintiff's reasoning, the references to money-mandating statutes that are replete in such case precedents are merely a "shortcut expression" of the requirement of a money damages *claim*, which Plaintiff is clearly making here. *Id*. at 14. "The United States is simply reading far too much into the *Testan* line of cases on the jurisdictional issues." *Id*. at 15.

Plaintiff's argument in this vein is quite bold. It contradicts explicit holdings of this Court's appellate body. As the Court in *Citizens* noted, "'Tucker Act jurisdiction requires not only a claim against the United States, but also requires, based on principles of "sovereign immunity," that <u>there be a separate money-mandating statute the violation of which supports a claim for damages against the United States</u>.'" No. 11-257 C, 2011 WL 6934813 at *5 (quoting *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (emphasis added by trial court in *Citizens*)). The Court of Federal Claims is obligated to follow the precedent of the Federal Circuit. *Coltec Indus. v. United States*, 454 F.3d 1340, 1353 (Fed. Cir. 2006).

B. Plaintiff Has Not Alleged the Elements of a Contract Implied in Fact

Plaintiff also argues for a right of reimbursement based on an implied contract between CMS and Plaintiff. "It is the position of plaintiff in this case that the organization of the Medicare Secondary Payer Program, under the statute and the regulations, establish a program, a set of mutual obligations, and a known priority between Medicare and the various payers subject to the MSP laws as to which is primary and which [is] secondary." Pl.'s Resp. at 18. Plaintiff asserts that it is a contract implied in fact. "It is the relationship between the parties, the circumstances of their interactions, which form the basis of the contract implied in fact which is being argued here." *Id*.

Plaintiff's contract argument is equally unavailing. As noted above, the MSPA and its regulations evince no such set of *mutual* obligations, that is, none that flow from the federal government to the benefit of the private insurer. Furthermore, although "[t]here is no dispute that the Court of Federal Claims has jurisdiction to adjudicate claims involving implied-in-fact contracts between private parties and the United States," a plaintiff must articulate facts sufficient to support a valid claim for breach in order to surmount the government's motion to dismiss. *Bussie v. United States*, No. 2011-5085, 2011 WL 4638788 at *1 (Fed. Cir. Oct. 7, 2011) (citing *Barrett Ref. Corp. v. United States*, 242 F.3d 1055, 1059 (Fed. Cir. 2001)). The elements of a contract implied in fact are the same as those of an express contract. "The party alleging a contract must show a mutual intent to contract including an offer, an acceptance, and consideration." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). The difference is that, in the implied-in-fact contract, an agreement is inferred from the conduct of the parties. *Lumbermens Mut. Cas. Co. v. United States*, 654 F.3d 1305, 1316 (Fed Cir. 2011). "A contract with the United States also requires that the Government representative who entered or ratified the agreement had actual authority to bind the United States." *Trauma Serv. Grp.,* 104 F.3d at 1325.

Plaintiff here, however, articulates no particular facts in support of the necessary contractual elements of offer, acceptance, consideration, or actual authority. Instead, in its Complaint, it asseverates conclusorily that the "determination of the rights of priority under the statutes and regulations constitutes an implied contract between CMS and no-fault insurers, governing the priorities between them." Compl. ¶ 16. Its brief in opposition to the Government's motion to dismiss is similarly insubstantial: "There must also be a recognized right to reimbursement flowing from CMS to a no-fault or other payer which has paid an item that CMS is to pay, under the implied contract inherent in the comprehensive system that Congress has put into place." Pl.'s Resp. at 19. Plaintiff's assertion of a right of reimbursement that "must . . . be . . . recognized," *id*., does not, without more, suffice as a claim of a contract implied in fact.

    C.  Plaintiff has Not Alleged the Necessary Elements of an Illegal Exaction

Plaintiff makes a third argument for jurisdiction, illegal exaction, based on the provision of the Tucker Act that allows suits against the federal government for money "damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). This language enables suit even in the absence of a money-mandating statute or an express or implied contract:

> When Congress, having expressly given this court jurisdiction of claims 'founded upon any express or implied contract with the United States", in the very next clause gave the court jurisdiction over claims "for liquidated or unliquidated damages in cases not sounding in tort," it must have supposed that there are non-contractual claims which do not sound in tort.

*Pan Am. World Airways, Inc. v. United States*, 122 F. Supp. 682, 683-84 (Ct. Cl. 1954).

6

On that basis, Plaintiff claims a right of action for a "corporation which has paid improper Federal exactions or assessments 'under protest' and then sought repayment and reimbursement." Pl.'s Resp. at 22. In support, Plaintiff cites *Pan American* as well as *Clapp v. United States*, 117 F. Supp. 576 (Ct. Cl. 1954). In both of those cases, however, the plaintiffs had, indeed under protest, paid monies to certain government agencies (in *Clapp*, the United States Maritime Administration; in *Pan American*, the Immigration and Naturalization Service) based on the agencies' claims of statutory authorization to assess the payments. The plaintiffs claimed that the agencies had exceeded their authority under the particular federal statutes. Both cases involved "situations where the Government has the citizen's money in its pocket, and pleads the illegal acts of its officials as an excuse for keeping it there." *Clapp*, 117 F. Supp. at 580; *see also Pan Am.*, 122 F. Supp. at 683 (referring to "the compelling equities of these situations in which the Government admittedly has the citizen's money and seeks to keep it").

Here, Auto Club Insurance is correct that the Tucker Act encompasses a claim of illegal exaction (a non-tortious, non-contractual claim for money damages), but deficient in alleging the essential elements of an illegal exaction. It has not paid any funds to the federal government, the government is not keeping any funds belonging to Plaintiff, nor has a federal agency here assessed any payment from Plaintiff based on a federal statute or regulation. Rather, Plaintiff's payment of the medical expenses incurred by its insured are due to the Michigan no-fault statute and the payments were made to the insured's medical providers, not to the federal government. Plaintiff argues, however, that "the net result is similar – CMS in effect has the insurer's money in its pocket." Pl.'s Resp. at 23. Nevertheless, it is quite clear that, even in the class of claims "in which the plaintiff has paid money over to the Government, directly or in effect . . . the claim must assert that the valued sued for was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967). Here, no funds of Auto Club Insurance have been paid to the federal government, even in effect, by force of any federal statute or regulation. Despite its appeal for an "even-handed application of the reimbursement schema" of the MSPA, Pl.'s Resp. at 23, Plaintiff has not made out a proper claim of illegal exaction under the Tucker Act.

IV.     Conclusion

For the reasons stated above, Defendant's motion to dismiss is granted. The Clerk of Court is directed to enter judgment accordingly.

s/ Edward J. Damich
EDWARD J. DAMICH
Judge
